## Case No. 7,721.

### The KEOKUK.

### [1 Biss. 522.] [1]

District Court, D. Wisconsin. Sept. Term, 1866.

LIBEL—IN WHOSE NAME BROUGHT—LIABILITY OF CARRIER—NOT DIMINISHED BY SPECIAL RISKS—EXCEPTED PERIL—BURDEN UPON CARRIER.

1. A libel may be brought either in the name of the shipper or of an insurance company which has paid the loss or accepted an abandonment.
   [Cited in The Ocean Wave, Case No. 10,417.]

2. The law makes no distinction between common carriers on water. The fact that the naviga-

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

tion of the Mississippi river is attended with special risks and expenses does not diminish the liability of a carrier thereupon.

3. When a loss or damage is shown, the burden is upon the carrier to bring it within the excepted peril. The exception is for his protection, and it is for him to establish it. It is not sufficient simply to show that the vessel was stranded. He must show that it was caused by an unavoidable danger of the river.

In admiralty. The contract of affreightment in this case, was for the transportation of wheat in bulk in the barge Pat Brady, towed by the steamboat Keokuk, from Hastings, Minnesota, to La Crosse on the Mississippi river, to be delivered in good order, "the unavoidable dangers of river and fire only excepted." It is propounded in the libel, that by reason of the unseaworthiness of the boat and barge, and of the decayed condition of the barge, and its utter insufficiency to carry safely wheat in bulk, and the unskillfulness and mismanagement and carelessness of the master, and the neglect of his mariners and servants, the barge was sunk in the river, the wheat was wetted and damaged, and wholly lost. Libellant, the Home Insurance Company, having issued a policy of insurance on the wheat, was compelled to compensate the shipper for the loss. It is alleged in the libel, and confessed in the answer, that the boat and barge belonged to, and were in the employ of the claimant, John Robson. It is pleaded in the answer that the barge was tight, staunch and strong, and was well and duly equipped and officered, and in all respects fit to perform the trip, and was sea-worthy, and in good repair and condition; that about eleven o'clock in the evening of the 12th day of May, 1865, in proceeding on her voyage and in her proper place and channel, at Buffalo Slough, near Wineska, the barge struck a hidden, concealed, and unknown snag in the river, causing her to spring a leak and sink within the space of thirty minutes, in four feet of water, and the wheat, or a great portion of it, was damaged. The wheat was delivered up to the agent of the insurance company.

Emmons & Van Dyke, for libellant.

J. W. Cary, for respondent.

MILLER, District Judge. The objection to this libel, that it is brought by the insurance company, and not by the shipper, is not tenable. Libels may be brought either in the name of the shipper, or by the insurance company having paid the loss, or accepted an abandonment. Under rule 34 in admiralty, the underwriter who has accepted an abandonment, which divests the original claimants of all interest, may be admitted to intervene and become the dominus litis in a suit in rem. The Ann C. Pratt [Case No. 409]; The Monticello v. Mollison, 17 How. [58 U. S.] 152. And by rule 43 of admiralty, the insurance company could come into court by petition, for the avails or proceeds of a decree in favor of the shipper, if the libel had been brought by him in his own name.

It is urged that the strict rule as to the liability of common carriers, should not be applied to those on the Mississippi river on account of the risks and expenses of navigation. The only answer required is, that the law makes no distinction between common carriers on water, as to their liability. They are entrusted with the property of others for a compensation; and for the security of property, they are considered in the light of insurers. It is allowable to carriers exposed to unusual risks and expenses, to charge accordingly. From the bills of lading, exhibited in these suits, it is probable that the officers of the packet company understood this principle.

The alleged cause of the sinking of the barge is that she struck a hidden, concealed and unknown snag. The proof must show satisfactorily that the alleged cause of the accident was unavoidable. It is the claimant's business to establish with reasonable certainty, that it was caused by an unavoidable danger of the river. The exception in the bill of lading was inserted for the carrier's protection, and is to be established by claimant. Where a loss or damage is shown, it is incumbent upon the carrier to bring it within the excepted peril, in order to discharge himself from responsibility. It is not sufficient, without more, to show that the vessel was stranded, to bring the goods within the exception in the bill of lading. King v. Shepherd [Case No. 7.804]; Abb. Shipp. 478. And after the damage is established, the burden lies upon the respondents to show that it was occasioned by one of the perils from which they are exempted in the contract of shipment or bill of lading. Clark v. Bonnell. 12 How. [53 U. S.] 272; Rich v. Lambert, Id. 347; Chit. Carr. 242; Story, Bailm. §§ 528, 529; 3 Kent, Comm. 213; 1 Smith, Lead. Cas. 313; Chouteaux v. Leech. 18 Pa. St. 233; Fland. Shipp. § 257; Marv. Wreck & Salv. 21; Pars. Mar. Law, 348; Smith, Mer. Law, 386.

There is no testimony to sustain the allegation in the answer, that the barge unavoidably struck a concealed and unknown snag; or any reliable proof that she struck a snag at all. The captain did not stop to investigate the cause of the accident, but the boat proceeded on her course at the rate of seven or eight miles an hour.

The boat was towing two loaded barges, in addition to her own cargo, and was running in the night, and in the shade of the surrounding timber, trees and evergreens, at the rate of twelve miles an hour, on the starboard side of the channel. The claimant has in no manner brought itself within the exception of the bill of lading. There is no unavoidable danger of the river proven. And it is probable, if a snag had been

discovered to have caused the accident, that the position and speed of the boat at the time, would prevent claimant from successfully setting up the plea of unavoidable danger of the river. It seems that the officers of claimant's boats were more intent upon speed than safety.

Decree for libellant.

NOTE. This case was carried by appeal to the circuit court [case unreported], and then to the supreme court of the United States, and the judgment of the district court affirmed.

[Mr. Justice Miller delivered the opinion in the supreme court. He held that it is the duty of carriers on the inland rivers to take into account the nature of the service and the dangers attending the navigation in these waters, the dangers arising from narrow and crooked channels, through shallow water and necessary crowding of boats and barges; that, in order to meet these and other necessary conditions, the barges should be strong, sound, and capable, built and operated with these dangers in view and these conditions known; that, if they are not thus capable, they are not seaworthy, and are unfit for the navigation of the rivers. "The evidence shows that the steamboat was descending the river in the night, when a slight shock was felt on the barge, so slight that it was not communicated to the boat." "It did not stop nor retard neither the barge nor boat, but in a few minutes the former was found to be sinking, and had to be grounded on the nearest sandbar. It was argued by the claimants that the barge struck a sunken rock or snag, with such force as to tear open her planks, and that the sinking was one of the unavoidable dangers of the river." "But, without attempting any nice criticism of that phrase, we are entirely satisfied that there was no shock or force which a strong, well-built barge would have not sustained without injury. The slight character of the shock, the rotten condition of the barge, the additional fact that she was an old barge, which had been repaired and had her name changed a year or so before the accident, all prove this. No snag or rock was proved to exist there. It was, in all probability, an ordinary rub over a sandbar, which the barge, in her decayed condition, could not stand without leaking." 9 Wall. [76 U. S.] 526.]